## PORTER et al. v. SULLIVAN et al.
### (No. 8239.)

Court of Civil Appeals of Texas. San Antonio. July 3, 1929.

Rehearing Denied July 31, 1929.

Cofer & Cofer, of Austin, for appellants.

Boone & Savage, of Corpus Christi, for appellees.

SMITH, J. In 1921 the Falfurrias State Bank was doing business in Falfurrias, Brooks county; Richard G. Miller being its president and John C. Thomas its active vice president. In that year Dr. M. B. Porter, a professor in the University of Texas, residing at Austin, purchased some of Miller's stock in the bank, and he and his wife, Lelia T. Porter, deposited some of their idle funds in the bank. At that time, also, the Porters made an agreement with President Miller whereby the latter assumed to loan the Porters' money to others, upon good security, and did make some loans under this agreement, to the Porters' satisfaction. President Miller died in June, 1922, and in July thereafter, upon Dr. Porter's request, Vice President Thomas wrote Dr. Porter, giving him a statement of his and his wife's accounts with the bank, and of the securities purchased for them by Miller, and stating in part: .

"If you wish we would be glad to look after your notes and accounts the same as Mr. Miller did, and will handle it to the very best of our ability, and the Bank will be responsible for any loans that they make for you as we will be very careful not to make loans only on the very best of security or to some one who is perfectly good. * * *

"We expect to run the bank as near as possible along the lines that Mr. Miller had always run it, and had planned to run it in the future. Any information you may wish please do not hesitate to call on us for any assistance we can give you in any way we will be glad to do so."

This letter was written on the bank's letterhead and was signed by Thomas, officially, as vice president. Dr. Porter acquiesced in the proposal contained in Thomas' letter, and under that authority the latter loaned some of Porter's money to J. P. Sullivan, on the latter's unsecured notes, and also took Sullivan's renewal of a note theretofore taken by Miller in Mrs. Porter's behalf, payable to her, and secured by worthless oil stock. At the time of these transactions Sullivan owed the bank about $18,000, which indebtedness was evidenced by Sullivan's notes, which had been renewed by Sullivan, because he could not pay them at maturity. The record shows all these loans to have been improvident, to say the least of them. None of them were secured; all of them were made in the face of the knowledge, upon the part of Thomas, at least, that Sullivan was heavily in debt to the bank, and was in a precarious financial

condition. The evidence was such as to warrant a finding that the loans made by Thomas, at least, were in violation of the trust assumed by him in his letter to Porter inviting the trust, and acted upon by Porter. After these loans were made, the assets and liabilities of the Falfurrias State Bank were taken over by its successor, the Falfurrias National Bank, under conditions which rendered the latter liable upon the legal obligations of the former.

■ The appeal presents the primary question of whether or not the acts of Thomas in making the loans for the Porters were the acts of the bank, and whether or not the bank shall be held liable for Thomas' derelictions in that transaction. We conclude that these issues were dependent upon facts which the trial judge resolved against the Porters, upon evidence deemed sufficient, and his finding thereon is conclusive.

■■ The bank is not shown to have profited by the transactions in dispute. It derived no benefits from its vice president's acts in loaning the Porters' money to third parties. On the contrary, those ventures were presumably in competition with the bank's chief business, to wit, the lending of money; and to the extent, if any, that Thomas' activities deprived the bank of loans it would have made, but for those activities, his course was adverse to the interests of the bank. It seems to be conceded that the bank was not authorized to engage in the business undertaken by Thomas in behalf of the Porters, and, that being true, the acts of Thomas, which were unknown to the bank's other officers and directors, will not be given that effect. It is true as a general rule, of course, that the knowledge or acts of Thomas, the active vice president, will be imputed to the bank; but this would not be so, except in matters within the scope of the bank's business, and in which the officer is acting in good faith within his authority, and not adversely to the interests of his principal. The scope of the bank's power, and the authority of its officers to bind it, are fixed by law, and knowledge thereof was chargeable to the Porters, who cannot complain of the bank if they were misled by Thomas' conduct. The latter alone would be liable to them. But he was not impleaded here.

Appellants complain that the evidence shows that the loans in controversy were in fact originally made by the bank to Sullivan, but were afterwards shifted by its officials from the bank to the Porters by interlineations in the notes. The evidence warrants such a suspicion, but is not conclusive, and the trial court's finding against appellant thereon is binding upon this court.

The evidence is conclusive that the loans made in behalf of the Porters by Richard Miller were in pursuance of an understanding which could not have bound the bank, and the trial court found upon sufficient evidence that the facts did not establish liability against Miller, or his estate. We sustain this finding.

We conclude that there is no merit in any of appellants' assignments and proposition, and that the judgment in favor of the bank and the executrix of Miller's estate, and in favor of the Porters against Sullivan alone, should be affirmed.